UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE:<br>    ELIZABETH HARNETT,<br><br>        DEBTOR. | CASE No.    14-32223 (JAM)<br>CHAPTER    7 |
| KARA S. RESCIA,<br>CHAPTER 7 TRUSTEE,<br>        PLAINTIFF.<br><br>V.<br><br>EASTERN CONNECTICUT STATE<br>UNIVERSITY,<br>        DEFENDANT. | ADV. PRO. No.    15-03025 (JAM)<br><br>RE: ECF Nos.    17, 27, 38 |

## APPEARANCES

Elizabeth D. Katz, Esq.                        Attorney for the Plaintiff
Rescia, Katz & Shear, LLP
5104A Bigelow Commons
Enfield, CT 06082

Denise S. Mondell, Esq.                        Attorney for the Defendant
Assistant Attorney General
State of Connecticut
55 Elm Street, Fourth Floor
P.O. Box 120
Hartford, CT 06141

### MEMORANDUM OF DECISION ON AMENDED MOTION TO DISMISS

**I.    INTRODUCTION**

On March 4, 2016, the Defendant, Eastern Connecticut State University ("ECSU"), filed an Amended Motion to Dismiss seeking to dismiss Count Two of the Plaintiff's First Amended Complaint (ECF No. 27). The Amended Motion to Dismiss asserts that Count Two should be

dismissed because the doctrine of sovereign immunity shields ECSU from the Plaintiff's avoidance claim. For the reasons discussed below, the Amended Motion to Dismiss is denied.

## II. PROCEDURAL HISTORY

### A. The Complaint, the Motion to Dismiss, and the Amended Complaint

On August 12, 2015, the Plaintiff, Kara S. Rescia, Chapter 7 Trustee (the "Trustee"), filed a complaint against ECSU seeking to avoid and recover alleged fraudulent transfers made by Elizabeth Harnett (the "Debtor"), to ECSU. The alleged fraudulent transfers are tuition payments made by the Debtor for the undergraduate education of her son.

On October 30, 2015, ECSU filed a Motion to Dismiss the Complaint (ECF No. 11). The Motion to Dismiss asserted multiple grounds for dismissal, including failure to state a claim upon which relief can be granted, improper service, and sovereign immunity. At a pretrial conference held in this matter on November 4, 2016, the court ordered the Trustee to amend the complaint and to file a response to the arguments in the Motion to Dismiss that would not be rendered moot by an amended complaint. The Trustee filed an objection to the Motion to Dismiss on December 3, 2015, and a First Amended Complaint on December 4, 2015 (the "Amended Complaint", ECF No. 17).

Count One of the Amended Complaint alleges that a $6,553.00 transfer from the Debtor to ECSU on January 10, 2013, is constructively fraudulent and avoidable under 11 U.S.C. § 548(a)(1)(B)[1]. Count Two alleges that under Section 544(b)(1), two transfers in the total amount of $11,253.00 made by the Debtor to ECSU are fraudulent transfers under applicable Connecticut state law. Count Three alleges that any transfers avoided are preserved for the

---

[1] 11 U.S.C. § 548(a)(1)(B), often referred to as Section 548(a)(1)(B) of the Bankruptcy Code, will be referred to in this decision as "Section 548(a)(1)(B)". All other references to specific sections of the Bankruptcy Code will be referred to as "Section _____".

2

benefit of the bankruptcy estate pursuant to Section 551. Count Four alleges that any transfers avoided are recoverable from ECSU pursuant to Section 550(a).

### B. The Bifurcation Order, the Motion to Dismiss, and the Amended Motion to Dismiss

On February 11, 2016, the court entered an Order bifurcating the Motion to Dismiss into an amended motion to dismiss and a motion for summary judgment because the Motion to Dismiss presented matters outside of the pleadings (the "Bifurcation Order"). The Bifurcation Order required ECSU to separately file an amended motion to dismiss with regard to its claim that sovereign immunity bars relief under Count Two.

On March 4, 2016, ECSU filed the Amended Motion to Dismiss as to Count Two (the "Amended Motion to Dismiss", ECF No. 27). On March 29, 2016, the Trustee filed an Opposition to the Amended Motion to Dismiss (the "Objection to Amended Motion to Dismiss", ECF No. 38). On May 25, 2016, a hearing was held on the Amended Motion to Dismiss and the Objection to Amended Motion to Dismiss. At the conclusion of the hearing, the court took the matter under advisement.

### III. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P. 7012(b), a motion to dismiss is decided by "construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Gibbons v. Malone,* 703 F.3d 595, 599 (2d Cir. 2013) (quoting *Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010) (internal quotation marks omitted)). To survive a motion to dismiss, a complaint must plausibly state a claim upon which relief can be granted. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine

whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

## IV. DISCUSSION

Count Two of the Amended Complaint asserts a claim against ECSU under Section 544(b)(1) and Connecticut state fraudulent transfer law. Section 544(b)(1) provides that a "trustee may avoid any transfer of an interest of the debtor in property . . . *that is voidable under applicable law by a creditor holding an unsecured claim*[.]" (emphasis added). When a proceeding is brought under Section 544(b)(1), a trustee effectively stands in the place of an actual unsecured creditor of the debtor. *See Silverman v. Sound Around, Inc. (In re Allou Distributors, Inc.)*, 392 B.R. 24, 31 (Bankr. E.D.N.Y. 2008) (explaining that "[u]nder Section 544(b)(1), a trustee's standing is 'completely derivative of [that] of an actual unsecured creditor' and depends on his alleging and proving that an actual creditor exists that satisfies both of these requirements.").

ECSU asserts that the defense of sovereign immunity prevents the Trustee from successfully obtaining relief under Section 544(b)(1). In support of this argument, ECSU maintains that it is a political subunit of the State of Connecticut and that the state, as a sovereign entity, is immune from suit under Section 544(b)(1) absent its consent. ECSU further argues that the defense of sovereign immunity leaves the Trustee unable to satisfy Section 544(b)(1)'s actual unsecured creditor requirement. Specifically, ECSU asserts that sovereign immunity prevents all actual unsecured creditors from pursuing the Connecticut state law fraudulent transfer causes of action brought under Section 544 and therefore there is no "actual creditor" holding an unsecured claim.

4

In response, the Trustee argues that ECSU's defense of sovereign immunity is expressly waived by Section 106(a)(1), which states in relevant part that: "[n]otwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following: (1) Sections . . . 544 . . . of this title." The Trustee further replies that Section 106(a)(1)'s clear waiver of sovereign immunity as to Section 544 also defeats ECSU's "actual creditor" argument.

An analysis of Section 106(a) begins with a review of the Bankruptcy Reform Act of 1994. The Bankruptcy Reform Act amended Section 106 to clarify Congress' intent to abrogate the sovereign immunity of governmental units under specific Bankruptcy Code sections. 2 *Collier on Bankruptcy* ¶ 106.01, p. 106-4 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). The amendment to Section 106 was intended to overrule the Supreme Court decisions in *Hoffman v. Conn. Dep't of Income Maint.*, 492 U.S. 96, 109 S. Ct. 2818, 106 L. Ed. 2d 76 (1989) and *United States v. Nordic Village, Inc.*, 503 U.S. 30, 112 S. Ct. 1011, 117 L. Ed. 2d 181 (1992), which held that former Section 106(c) did not sufficiently state a clear intent by Congress to abrogate the sovereign immunity of the States and federal government. *Id.* Section 106(a) now contains a list of fifty-nine (59) sections of the Bankruptcy Code under which sovereign immunity is expressly abrogated, including Section 544. *Id.*

Two years after Section 106(a) was amended, the Supreme Court addressed the issue of States' sovereign immunity in *Seminole Tribe v. Florida,* 517 U.S. 44, 116 S. Ct. 1114, 134 L. Ed. 252 (1996). The federal statute at issue in *Seminole* was not Section 106(a), but instead was the Indian Gaming Regulatory Act (the "Act"), enacted by Congress pursuant to the Indian Commerce Clause in Article I of the Constitution. The Seminole Tribe sued the state of Florida alleging that Florida had violated the Act by refusing to negotiate in good faith with tribes

wanting to enter the gaming arena. In response, Florida moved to dismiss the proceeding claiming that the suit violated its sovereign immunity. The Court held that despite Congress' clear intent to abrogate the States' sovereign immunity in the Act, the Indian Commerce Clause did not grant Congress the power to override the Eleventh Amendment and subject states to suits in federal court for violations of federally created rights. *Id.* at 47. Although not a bankruptcy case, the *Seminole* decision was "widely interpreted as rendering [S]ection 106(a) unconstitutional as it applied to the [S]tates." 2 *Collier on Bankruptcy* ¶ 106.01, p. 106-4 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

Eight years after *Seminole*, the Supreme Court again addressed the issue of state sovereign immunity, but this time in the bankruptcy case of *Tennessee Student Assistance Corp. v. Hood,* 541 U.S. 440, 124 S. Ct. 1905, 158 L. Ed. 2d 764 (2004). In *Hood*, the debtor brought an action against a state governmental corporation to determine the dischargeability of a student loan. The Court held that the debtor's proceeding to determine the dischargeability of a student loan "is not a suit against the State for purposes of the Eleventh Amendment." *Id.* at 443. The Court's decision was based on: (i) the bankruptcy court's jurisdiction being "premised in the *res*, not on the *persona*..." *id.* at 450; and (ii) the exercise of *in rem* jurisdiction by the bankruptcy court which "...is not an affront to States' sovereignty." *Id.* at 452. In citing to its prior decision in *Nordic Village*, the Court stated that when the bankruptcy court's jurisdiction over the res is unquestioned, the exercise of its *in rem* jurisdiction to discharge a debt does not infringe upon state sovereignty. *Id.* at 448. However, *Hood* expressly declined to address the lower court ruling which held that the States ceded their immunity from private suits in bankruptcy in the Constitutional Convention, and therefore the Bankruptcy Clause provided Congress with the necessary authority to abrogate state sovereign immunity in Section 106(a). *Id.* at 445.

6

Less than two years later, in the case of *Central Virginia Cmty. Coll. v. Katz*, 546 U.S. 356, 126 S. Ct. 990 (2006), the Court considered the question left open in *Hood*—whether Congress' attempt to abrogate sovereign immunity in Section 106(a) was valid. Before *Katz*, Congress, the Supreme Court, and most other courts believed that a valid congressional abrogation of sovereign immunity was necessary to allow for bankruptcy proceedings to be brought against a state without the state's waiver or consent. 2 *Collier on Bankruptcy* ¶ 106.02[1], p. 106-5 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). However, the Court in *Katz* held that the "enactment of [Section 106(a)] was not necessary to authorize the Bankruptcy Court's jurisdiction" over preference avoidance proceedings because in "ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts." *Katz*, at 362, 378.

The Supreme Court reached its holding after a thorough review of Constitutional history, particularly the passage of the Bankruptcy Clause found at Article I, §8, cl. 4 of the Constitution, and the proposed and enacted bankruptcy legislation which closely followed the ratification of the Constitution. *Id.* at 362-63. The Court reasoned that the Framers of the Constitution were familiar with the legal context within which they adopted the Bankruptcy Clause, which "reflect[ed] the States' acquiescence in a grant of congressional power to subordinate to the pressing goal of harmonizing bankruptcy law sovereign immunity defenses that might have been asserted in bankruptcy proceedings." *Id.* at 362. The Court further concluded that "the power to enact bankruptcy legislation was understood to carry with it the power to subordinate state sovereignty, albeit within a limited sphere." *Id.* at 377.

7

Based upon this history, the Court in *Katz* concluded that the "States agreed in the plan of the Convention not to assert any sovereign immunity defense they might have had in the proceedings brought pursuant to 'Laws on the subject of Bankruptcies.'" *Id.* at 377. Therefore, *Katz* holds that the Bankruptcy Clause eliminated the States' sovereign immunity in bankruptcy proceedings and no further statutory abrogation was required. *See* 2 *Collier on Bankruptcy* ¶ 106.02[2][a], p. 106-8 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

After *Katz,* some courts have questioned the scope of its holding. *See e.g., Texas v. Soileau (In re Soileau),* 488 F.3d 302 (5th Cir. 2007), *cert. denied,* 128 S. Ct. 1220, 170 L. Ed. 2d 60 (2008) and *Florida Dep't of Revenue v. Omine (In re Omine),* 485 F.3d 1305 (11th Cir. 2011), *withdrawn as moot due to settlement*, 2007 WL 6813797 (11th Cir. June 26, 2007). However, there is no language in *Katz* which limits, qualifies, or restricts its holding in bankruptcy cases. Furthermore, in the more than ten years since *Katz* was decided, the Supreme Court has not revisited *Katz.*

Applying the holding in *Katz* to this case, the court concludes that the Trustee's Section 544 claim seeks a determination that the alleged transfers are fraudulent transfers. Under *Katz*, Section 544, "standing alone, operates as a mere declaration of avoidance", which is an *in rem* adjudication. *See Katz,* at 362, 371 ("Bankruptcy jurisdiction, at its core, is *in rem.*"). Although the recovery of any transfer to ECSU declared to be a fraudulent transfer "might itself involve *in personam* process", *Katz* held that those who crafted the Bankruptcy Clause understood it to allow Congress to authorize courts to avoid . . . transfers and to recover the transferred property. *Id.* at 372. While the court acknowledges that preferential transfers and not state law fraudulent transfers were at issue in *Katz*, the court finds that fact to be a distinction without a difference in light of the holding in *Katz.*

8

The parties assert that Section 106(a) should be analyzed to determine if it operates as a valid waiver of sovereign immunity in connection with Section 544(b)(1). Although *Katz* holds it is not necessary to address the parties' Section 106(a) arguments, the court reviewed the case of *Kohut v. Wayne County (In re Lewiston)*, 528 B.R. 387 (Bankr. E.D. Mich. 2015), a post-*Katz* case cited by both parties which addresses Section 106(a) and Section 544.

The facts in *Lewiston* are similar to those in the instant case. *Lewiston* was a Section 544(b)(1) action brought by a trustee seeking to avoid certain state law fraudulent transfers made to the defendant Treasurer of Wayne County, Michigan. *Lewiston,* at 388. Wayne County moved to dismiss the complaint arguing—as ECSU does in the present case—that sovereign immunity shielded it from the trustee's claim, and in particular made it impossible for the trustee to satisfy Section 544(b)(1)'s actual creditor requirement. The trustee in *Lewiston* argued that Wayne County's defense of sovereign immunity had been waived by both Section 106(a) and *Katz*. *Id.* at 390.

The *Lewiston* court noted that Wayne County did not challenge *Katz's* holding that Congress could constitutionally abrogate the States' sovereign immunity because of the ratification of the Bankruptcy Clause. *Id.* However, the *Lewiston* court then undertook an analysis of Section 106(a), holding that Section 106(a)(1)'s waiver of states' sovereign immunity as to Section 544 was clear on its face. The analysis of Section 106(a) in *Lewiston* is thorough, relies on the plain language of the statute, and is compelling, but arguably was not necessary based on the holding in *Katz*.

## V.   CONCLUSION

For the reasons set forth herein, the court concludes that the States agreed not to assert any sovereign immunity defense in proceedings brought pursuant to the "Laws on the subject of

9

Bankruptcies" when they ratified the Constitution. The States therefore acquiesced to a subordination of whatever sovereign immunity they possessed. *Katz,* at 379. By enacting Section 106(a)(1), Congress codified what the States had already accepted by Convention—abrogation of the States' sovereign immunity "in the bankruptcy arena"—although according to *Katz*, such codification was not necessary. *Id.* at 362, 379. Accordingly, the Amended Motion to Dismiss is **DENIED**.

      **IT IS SO ORDERED** at Bridgeport, Connecticut, this 30th day of September, 2016.

_____
Julie A. Manning
Chief United States Bankruptcy Judge